UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JASON ALLEN OLRICH,

                Plaintiff,

v.                                             Case No. 18-cv-1981-pp

CITY OF KENOSHA, *et al.*,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S MOTIONS TO APPOINT COUNSEL (DKT. NOS. 4, 8), GRANTING PLAINTIFF'S MOTION TO STRIKE AMENDED COMPLAINT (DKT. NO. 14), SCREENING ORIGINAL COMPLAINT (DKT. NO. 1) AND DISMISSING CASE**

---

        The plaintiff, an inmate who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. Dkt. No. 1. That complaint consisted of eleven typewritten pages. The court received an amended complaint on June 19, 2019, consisting of six handwritten pages accompanied by several attachments. Dkt. Nos. 10, 10-1. This order resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, grants his motion to strike the amended complaint, dkt. no. 14, and screens the original complaint, dkt. no. 1. It also denies the plaintiff's motions to appoint counsel. Dkt. Nos. 4, 8.

**I.   Motion for Leave to Proceed without Prepaying Filing Fee (Dkt. No. 2)**

        The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows

a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without prepaying the civil case filing fee if he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On December 18, 2018, the court ordered the plaintiff to pay an initial partial filing fee of $0.71. Dkt. No. 7. The court received that fee on January 2, 2019. The court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Motion to Strike and Remove Amended Complaint (Dkt. No. 14)**

The court received the plaintiff's complaint on December 14, 2018. Dkt. No. 1. Six months later, on June 19, 2019, the court received a six-page, handwritten document that was captioned as an amended complaint. Dkt. No. 10. Rule 15 of the Federal Rules of Civil Procedure allow a plaintiff to amend his complaint one time without court permission, as long as he does so within twenty-one days after he serves the complaint (or, if the defendant has answered, within twenty-one days after service of the answer). The plaintiff's complaint hasn't yet been served on the defendant, so he didn't have to ask the court's permission to amend his complaint.

Normally, when a plaintiff files an amended complaint, it "supersedes," or takes the place of, the original complaint. Duda v. Bd. of Educ. of Franklin

Park Public School Dist. No. 84, 133 F.3d 1054, 1057 (7th Cir. 1998). Because of the court's heavy case load, however, it was not able to screen the plaintiff's complaint until now. And after the court received the amended complaint, the plaintiff filed a motion asking the court to strike it. Dkt. No. 14. As far as the court can tell, the plaintiff says other people advised him that if he didn't file an amended complaint with attachments, certain information would not ever come to light. He since has learned that the information would come out in discovery, but that it would not be appropriate to bring it out before the court had screened his complaint. Id. at 1-2. He asks the court to strike the amended complaint and the exhibits to it. Id. at 2. The court will grant that motion. It has reviewed only the original complaint.

### III. Screening the Original Complaint (Dkt. No. 1)

The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). For this reason, district courts "screen" complaints filed by self-represented plaintiffs to determine whether the complaints state claims for which a federal court can grant relief.

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that

allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that 1) someone deprived him of a right secured by the Constitution or laws of the United States, and 2) whoever deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty, of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

    A.    The Plaintiff's Allegations

The plaintiff says that on May 11, 2012, he got a ride home from his friend, Tyler Hayes, and Hayes' girlfriend, Tanner Crisp. Dkt. No. 1 at 4. Defendant officers Nosalik and Zeller of the Kenosha Police Department pulled over the car Tanner was driving. Id. at 3-4. At the time, Tyler had a pending drug charge, and had warrants for his arrest for failure to appear in court. Id. Crisp had no driver's license and no insurance on the car. Id. The plaintiff says that he didn't know any of this. Id. Nosalik and Zeller searched the car and found marijuana underneath Tyler's seat. Id. at 4–5. Nosalik and Zeller told Tyler they would let him go if he told them where he got the drugs. Id. at 4. Tyler lied and told the officers that the plaintiff gave him the drugs. Id. at 5.

The plaintiff says that Nosalik and Zeller arrested the plaintiff and Tyler, put them into the back of their undercover police car and drove to the Kenosha Police Department. Id. They told Crisp to follow them because they were going to release Tyler. Id. The plaintiff says that on the way to the station, Nosalik and Zeller told him that they would let him go if he could guess who "sang a song that was playing on his cell phone." Id. The plaintiff says that "the Defendant that the song was playing for Two Seconds and this Defendant stated, 'That was Prince, Jason, too bad you are going to jail now.'" Id.

The plaintiff asserts that Nosalik and Zeller took the plaintiff and Tyler to the police station and put them in separate rooms. Id. The plaintiff does not know what Tyler said to the officers, but they released Tyler and let him drive away with Crisp (knowing she had no insurance). Id. The plaintiff says that in the interrogation room, he asked Nosalik and Zeller for an attorney and a phone call. Id. Nosalik and Zeller refused, and the plaintiff kept repeating his request. Id. at 6. The plaintiff says that the defendants asked him if he'd ever seen Training Day with Denzel Washington, and the plaintiff said yes. Id. The defendants then asked the plaintiff if he wanted to go to jail or go home. Id. The plaintiff says he told the defendants that he wanted to go home. Id. He says Nosalik and Zeller said "okay" and told the plaintiff that he just had to do what they told him to do. Id.

The plaintiff says that Nosalik and Zeller made the plaintiff sign a waiver of his constitutional rights, stating that he delivered THC to Tyler on May 11, 2012. Id. The plaintiff says that as he "scribbled" his signature, he started

5

screaming that the defendants tricked him into signing a confession and that he wanted a lawyer. Id. He asserts that Nosalik and Zeller threatened him and made him sign the waiver/confession. Id. The plaintiff contends that after he signed that piece of paper, the defendants handed him another piece of paper and told him that all he had to do was write what they told him to write, and then he could go home. Id.

The plaintiff recounts that Nosalik and Zeller told him to write down that he entered "the red house." Id. The plaintiff says that he started to write that down, then stopped and told the officers that it was a lie, that he'd never entered the red house. Id. at 7. The plaintiff indicates that the defendants got angry and became violent, and they screamed, "Write it down Olrich." Id. The plaintiff says he repeated that he never entered the red house, at which point the defendants said, "That's it, you piece of shit, you are going to go to prison." Id. He maintains that the defendants grabbed him and threw him out of the chair onto the ground. Id. The plaintiff alleges that the defendants put him in the Kenosha County Jail and charged him with manufacturing and delivering THC and bail jumping. Id.

The plaintiff says that all of this took place on May 11, 2012, and that that was the day the defendants put him in the jail. Id. The plaintiff claims that he was supposed to see a judge on Monday (presumably May 14, 2012), but he was released on Sunday; he says "the charges were dropped; they stated that they made a mistake." Id. The plaintiff indicates that he let this go, because he couldn't find a lawyer to help him. Id.

6

The plaintiff indicates that while he was in jail, staff "immediately" put him on suicide watch because Nosalik and Zeller told them he was suicidal. Id. at 8. The plaintiff claims that he was nude the entire time, and that staff refused to feed him. Id.

The plaintiff says that on October 5, 2016, "the charges from this incident were brought back up and used against him, even though he was never re-charged or convicted of the charges because he was innocent." Id. The plaintiff indicates that "they" never re-charged him because "they" could not prove the 2012 charges. Id. It appears, however, that several years later, the plaintiff was charged in a different case, in which he learned that the prosecutor had filed a motion asking to use the facts surrounding the 2012 incident as "other acts evidence." Id. The plaintiff says that on October 5, 2016, "the District Attorney filed an Other Acts Motion to use as evidence for trial." Id. The plaintiff says that his lawyer in the new case gave the plaintiff his discovery, which included police reports from the incident involving the defendants. Id. The plaintiff asserts that someone altered the police reports, and that the reports contained many lies. Id. He says that he wrote to the police department with concerns about what the defendants had done but was told that there were no tapes of the interrogation. Id. at 9. The plaintiff says he has flashbacks of the interrogation and what happened in the jail, causing him to worry that he could be put into suicide watch again by law enforcement. Id.

On page 2 of the complaint, the plaintiff provided a list of alleged constitutional provisions and laws he claims this behavior violated, including

7

the Fourth (Miranda violation), Fifth (self-incrimination violation), Sixth, Eighth (cruel and unusual punishment and excessive force) and Fourteenth Amendments (including violations of substantive and procedural due process protections), and claims of unlawful arrest, coercion and defamation. Id. at 2.

For relief, the plaintiff asks that the charges against him be expunged and any records be deleted from his records, that the officers be disciplined, that the officers be "retrained," that "each interrogation be stored in a central storage facility," that he receive $20,000,000 in compensatory damages and $20,000,000 in punitive damages, that the defendants pay "taxes on all money to him, if settled or otherwise," that the defendants pay his attorneys' fees (if the court appoints an attorney for him), that he be reimbursed for all costs and fees and that he be compensated for his time doing research and preparing pleadings and briefs.

B.  Analysis

The events the plaintiff describes in the complaint took place during a couple of days in May 2012. The court received the plaintiff's complaint on December 14, 2018—six years and seven months later. Section 1983 does not contain a statute of limitations. Malone v. Corr. Corp. of America, 553 F.3d 540, 542 (7th Cir. 2009). Federal courts apply the limitations periods used for personal injury cases in the state in which the alleged injury occurred. Id. (citing Wilson v. Garcia, 471 U.S. 261 (1985)). At the time of the events the plaintiff describes in the complaint, Wis. Stat. Ann. §893.53 required a plaintiff to sue within six years after the cause of action accrued. See, *e.g.*, Gray v.

Lacke, 885 F.2d 399, 409 (7th Cir. 1989). As of April 5, 2018—eight months before the plaintiff filed his federal lawsuit—the statute of limitations was three years. Wis. Stat. Ann. §893.53. A §1983 claim that a state actor violated a plaintiff's civil rights accrues "when the plaintiff has a complete and present cause of action." Wallace v. Kato, 549 U.S. 384, 388 (2007). The limitations period starts to run either when the plaintiff discovers his injury or when he should have discovered it with "reasonable diligence." Hanson v. A.H. Robins, Inc., 113 Wis. 2d 550, 556 (1983).

The plaintiff's claims "accrued" as of May 13, 2012, because he knew of his injuries when they happened. Under the six-year statute of limitations that applied in 2012, the plaintiff needed to file his federal lawsuit by May 13, 2018; he did not file it until December 14, 2018, seven months later. His claims are time-barred.

Toward the end of his complaint, the plaintiff says that "the charges from this incident were brought back up and used against him" when, in October 2016, the prosecutor in another case sought to use something about the 2012 incident as "other acts" evidence in another case. The court is not sure what the plaintiff means by saying that the "charges" from the incident were used against him in another case; he says that there were no charges from the 2012 incident. The plaintiff also says that the police reports he received through discovery in the later case were "from the incident from May 5, 2012." Dkt. No. 1 at 8. The federal complaint, however, does not mention any incident on May 5, 2012—it discusses only the events of May 11-13, 2012.

Even if, however, the plaintiff was charged in a different case several years later, and the prosecutor in that later case filed a motion on October 5, 2016 asking to use something about the plaintiff's May 11-13, 2012 interactions with the defendants as "other acts" evidence, those facts would not be sufficient for the court to allow the plaintiff to proceed. The plaintiff has not indicated whether the judge in the later case allowed the prosecutor to use the 2012 incident, or what information from the 2012 incident the judge allowed the prosecutor to use, or how—if at all—the use of the information injured him. Nor has the plaintiff alleged that any of the defendants he has sued—the City of Kenosha (not a proper defendant because the plaintiff has not alleged a pattern or practice of constitutional violations), the City of Kenosha Police Department (not a proper defendant because it is an arm of the city), Nosalik or Zeller—tried to use the 2012 information against the plaintiff in a later case. Even if whatever might have happened in 2016 is not time-barred, the plaintiff has not provided sufficient facts to state a claim based on 2016 events.

## IV. Motions to Appoint Counsel (Dkt. Nos. 4, 8)

When he filed his complaint, the plaintiff filed a motion asking the court to appoint a lawyer to represent him. Dkt. No. 4. He said he could not afford a lawyer, that the case was complex, that he had limited access to the law library and that he had limited legal knowledge. Id. Four months later, he filed an amended motion to appoint counsel. Dkt. No. 8. This motion added details about the plaintiff's mental illnesses.

Because the court must dismiss the plaintiff's claims as barred under the statute of limitations and because they fail to state a claim, the court will deny the plaintiff's motions to appoint counsel.

## V. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES** the plaintiff's motion to appoint counsel. Dkt. No. 4.

The court **DENIES** the plaintiff's amended motion to appoint counsel. Dkt. No. 8.

The court **GRANTS** the plaintiff's motion to strike the amended complaint. Dkt. No. 14.

The court **FINDS** that the plaintiff's original complaint fails to state a claim for which this court can grant relief, because it is barred by the statute of limitations and does not contain sufficient facts to state a claim for which a federal court can grant relief. Dkt. No. 1.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g) and will enter judgment accordingly.

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the $348.58 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an

amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state, or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of Oshkosh Correctional Institution and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a

reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 30th day of July, 2019.

                        **BY THE COURT:**

                        _____

                        **HON. PAMELA PEPPER**
                        **United States District Judge**